UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                 Case No:  8:25-cr-00137-JLB-TGW

DONTAVIOUS LAGARRIE GRANT,

     Defendant.

_____/

## **ORDER**

Before the Court is Defendant Dontavious Lagarrie Grant's Objections (Doc. 92) to the Magistrate Judge's Report and Recommendation (Doc. 82), recommending the denial of his motion to suppress evidence obtained pursuant to a warrantless traffic stop.   The Government responded (Doc. 93) to those objections.   After an independent review of the record, the Court **OVERRULES** Plaintiff's objections (Doc. 92) and **ADOPTS** the well-reasoned Report and Recommendation in its entirety.   (Doc. 82).

## BACKGROUND

The following facts are undisputed.   (Doc. 89 at 85–88).   On September 18, 2024, a woman called 911 to report that her rental vehicle may have been stolen.[1] (Doc. 80-1).   The caller told police that her husband previously had the vehicle, but she had not spoken to him in two days.   (Doc. 89 at 85:18–21).   When she made the 911 call, the caller could see the vehicle and was following it.   (*Id.* at 85:21).   The caller observed that a woman was driving that vehicle and later accurately reported that the driver switched places with a man.   (*Id.* at 85:21–23).   The caller told police that she had not spoken to her husband for at least a day, and he had not told her he was with anyone else.   (*Id.* at 86:1–2).   During the 911 call, the caller gave the dispatcher detailed information about the vehicle, including the make, model, color, license plate, location, speed, and two people switching as drivers of the vehicle.   (*Id.* at 86:5–7).   While the caller said her husband might be in the car, she told police she was not sure.   (*Id.* at 86:8–9).   The caller gave the dispatcher her name and phone number, agreeing to meet officers about her report.   (*Id.* at 86:9–11).

Law enforcement officers were alerted to the report during the 911 call and dispatched.   (*Id.* at 86:12–13).   They received the following information from the

---

[1] Defendant objects to the statement that "all parties agree that a 911 caller reported her car stolen" because the 911 caller stated that the car was "possibly" stolen.   (Doc. 92 at 7) (citing Doc. 82 at 11).   During the evidentiary hearing, the Magistrate Judge confirmed with the parties all undisputed facts, including that "a woman called 911 and reported that her rental vehicle had been stolen."   (Doc. 89 at 85).   The Magistrate Judge asked the parties whether they agreed to this fact and requested they make necessary objections should they disagree. (*Id.*).   Neither party objected.   (*Id.* at 88).   Counsel for the Defendant told the Court, "I think those facts are accurate."   (*Id.*).

dispatcher:

17:04:26   [REPORTEE] IS FOLLOWING // SOMEONE STOLE HER RENTAL CAR

17:04:48   HEADING WEST ON WINTER LAKE RD

17:05:32   [REPORTEE] ADVISED THEY ARE SPEEDING 90 MPH HEADING WEST ON WINTER LAKE RD

17:17:05   VICT ADV THE HUSBAND WAS LAST IN POSSESION OF THE TRUCK AND HE WAS GONE 2 DAYS, THERE WAS A FEMALE DRIVING THE TRUCK SO THEY MAY NOT KNOW ANYTHING ABOUT A S10 [("stolen vehicle")]

17:17:23   REPT ADV SHE HASNT SPOKEN TO HUSBAND IN 2 DAYS

17:25:07   REQ 3897 TO ASCERTAIN IF S10 [("stolen vehicle")] OR S22C [("civil matter")]

17:28:26   2 MALES IN FRONT, FEMALE IN BACK

17:28:55   CE8991U Comment: ADV WILL BE S22C

17:29:06   HUSBAND IS ON LEASE AND SHE CANT GET HOLD OF

(Doc. 50-1 at 2–5).

When officers located and stopped the vehicle shortly after the 911 call was made, they were unaware of the identities of any of the passengers.   (Doc. 89 at 87:12–14).   Officers later learned that the Defendant was driving the vehicle, the 911 caller's husband was the front seat passenger, and a woman was seated in the back.   (*Id.* at 87:15–17).   Visible in the vehicle was an ashtray with burnt cigarettes, which were later tested at the scene.   (*Id.* at 87:19–22).

Officers directed the passengers to exit the vehicle and searched it, recovering a firearm, ammunition, a magazine, marijuana, Xanax, crack cocaine,

3

and drug paraphernalia.   (*Id.* at 87:23–88:1).   The officers did not have consent or a warrant to search the vehicle.   (*Id.* at 88:1–2).

The Government charged the Defendant with possession of a firearm or ammunition by a convicted felon, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime.   (Doc. 1).

The parties do, however, dispute other material facts.   (Doc. 89 at 88–89). The 911 caller's husband, Mr. Parker, testified that the vehicle committed no traffic violations, that no one was smoking marijuana, and that the vehicle did not smell like marijuana.   (*Id.* at 88:19–23).   Mr. Parker testified that he believed the cigarettes could have been tobacco or marijuana cigarettes.   (*Id.* at 88:21–23).

Deputy Gann testified that officers smelled burnt marijuana as they approached the vehicle following the traffic stop.   (*Id.* at 88:24–25).   As they approached, the burnt marijuana smell became stronger, and the cigarettes in the ashtray field tested positive for marijuana.   (*Id.* at 88:25–89:3).

## LEGAL STANDARD

A district judge may accept, reject, or modify the magistrate judge's report and recommendation.   28 U.S.C. § 636(b)(1).   The district judge must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   *Id.*

## DISCUSSION

Defendant first objects to the Magistrate Judge's credibility determination as to Deputy Gann and Mr. Parker's testimony.   (Doc. 92 at 8–9).   Specifically,

Defendant contends that the Report and Recommendation relies on Deputy Gann's testimony without addressing "inconsistencies in his report and testimony . . . as to the cad call notes." (*Id.* at 8). Defendant refers to Deputy Gann's testimony that he was aware that the 911 caller's husband was the last person in possession of the vehicle and that, just prior to the traffic stop, the CAD call notes reflected the following comment: "ADV WILL BE S22C [('civil matter')]." (*Id.* at 4) (citing Doc. 89 at 32–33). Defendant also takes issue with Deputy Gann's testimony that he did not recall whether the note was announced over the radio or just put on the call screen on his laptop, which he testified would have been closed while he was driving. (*Id.* at 4) (citing Doc. 89 at 34). Put simply, Defendant argues that the CAD call comment categorizing the report as a civil matter dispelled Deputy Gann's reason to make the traffic stop. Additionally, Defendant argues that the Report and Recommendation did not reconcile Deputy Gann's and Mr. Parker's testimony. (*Id.* at 8). Accordingly, Defendant asks the Court to reject the Magistrate Judge's credibility determination of Mr. Parker and conduct its own evidentiary hearing. (*Id.* at 9).

"'[T]o adequately determine the credibility of a witness . . . the fact finder must observe the witness.'" *United States v. Powell*, 628 F.3d 1254, 1257 (11th Cir. 2010) (quoting *Louis v. Blackburn*, 630 F.2d 1105, 1110 (5th Cir. 1980)). "This requirement is satisfied 'either by the district judge accepting the determination of the magistrate after reading the record, or by rejecting the magistrate's decision and coming to an independent decision after hearing the testimony and viewing the

witnesses.'"    *Id.* (citation omitted).

Defendant argues that the Magistrate Judge provided no reasoning for relying on Deputy Gann's testimony rather than Mr. Parker's testimony.    (Doc. 92 at 8–9) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (affirming the district court's deference to the magistrate judge's credibility determination where the magistrate judge did not solely rely on the status of the witnesses, taking into account their motivations, consistencies and inconsistencies, and demeanor)).    The Court disagrees.    In determining that Deputy Gann's testimony was more credible than Mr. Parker's, the Magistrate Judge weighed "the witnesses' demeanor, consistency, and motivations," and considered additional evidence presented.    (Doc. 82 at 7).    Thus, the Magistrate Judge did not rely solely on Deputy Gann's testimony because he is a law enforcement officer; rather, the Magistrate Judge properly weighed the witnesses' credibility.    The Court finds no reason to reject the Magistrate Judge's credibility determination.

Indeed, Mr. Parker testified that he only "vaguely" remembered the traffic stop.    (Doc. 89 at 55).    Mr. Parker further testified that "[i]t could be true" that the cigarettes in the ashtray were marijuana cigarettes.    (*Id.* at 64).    And when asked whether he was "aware that the vehicle was violating any traffic laws," Mr. Parker responded, "No."    (*Id.* at 57).

The "inconsistencies" identified by Defendant in Deputy Gann's testimony are unpersuasive.    Defendant argues that Deputy Gann knew that the last person the 911 caller saw with the vehicle was her husband.    (Doc. 92 at 4).    However,

Deputy Gann testified that he was aware that the caller "advised that her vehicle is possibly stolen" and that the caller "said her husband may have had the vehicle, but she was unable to get in contact with him to confirm it." (Doc. 89 at 14, 20). Moreover, Deputy Gann's testimony that he could not recall whether the "S22C [('civil matter')]" comment was announced over the radio or entered on the call screen is not inconsistent with the rest of his testimony. (Doc. 89 at 34). Defendant argues it is inconsistent merely because Deputy Gann mentioned "[h]is inability to hear over the radio or review his computer screen . . . only . . . after being confronted with the inconsistency *of the cad call notes . . . .*" (Doc. 92 at 4) (emphasis added). Deputy Gann is not responsible for the CAD call notes. (Doc. 89 at 13). He testified that, in responding to the call, he relied on information provided to him by dispatchers, explaining that one person takes the 911 call and "build[s] the screen with all the information," and the dispatcher "relay[s] what the call taker is taking from the 911 call." (*Id.*). Deputy Gann testified that if an officer needs more information from the caller, the officer may ask the dispatcher for the information, who, in turn, tells the call taker to obtain it from the caller. (*Id.*). Thus, his testimony that he could not recall whether he could hear the dispatcher read the "S22C" comment over the radio or whether it was read over the radio is not inconsistent with his other testimony. Upon an independent review of the record, the Court accepts the Magistrate Judge's credibility determination that Deputy Gann's testimony is credible and reliable.

Defendant next objects to the Report and Recommendation's finding of

reasonable suspicion to make a traffic stop.  (Doc. 92 at 9–12).  Specifically, Defendant opines that, because the CAD notes categorized the report as civil, Deputy Gann lacked reasonable suspicion and probable cause to believe that a crime was being committed when law enforcement stopped the vehicle.  (*Id.* at 10). Before stopping the vehicle, Deputy Gann testified that he knew the 911 caller reported that her vehicle was possibly stolen.  (Doc. 89 at 14, 20).  He also testified that, prior to making the stop, he was unaware of the CAD note categorizing the report as a civil matter.  (Doc. 89 at 34–35).

Because a traffic stop is more akin to a *Terry* stop than to formal arrest, a law enforcement officer needs only reasonable suspicion that a crime has been or is being committed.  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *Alabama v. White*, 496 U.S. 325, 329 (1990).  Reasonable suspicion requires "specific, articulable facts and rational inferences" creating "'some minimal level of objective justification.'"  *United States v. Briggman*, 931 F.2d 705, 708–09 (11th Cir. 1991) (citing *Terry*, 392 U.S. at 21).  "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'"  *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama*, 496 U.S. at 330).  "Reasonable suspicion may be based on information supplied by another person, as long as the information bears sufficient indicia of reliability."  *United States v. McCall*, 563 F. App'x 696, 700 (11th Cir. 2014) (citation omitted) (holding that a 911 call provided reasonable suspicion to make a traffic stop for a possible stolen vehicle where the caller accurately described the

vehicle's make, model, color, year, and location).

Here, Deputy Gann responded to the 911 call reporting a possible stolen vehicle. The 911 caller was sufficiently reliable, accurately describing the vehicle's make, model, color, location, and license plate, among other details, contemporaneously while following the vehicle, and agreed to later meet with law enforcement regarding the report. (Doc. 80-1).

Defendant challenges the Magistrate Judge's reliance on *United States v. Sokolo*, 490 U.S. 11 (1989), for the proposition that officers are not required to use "less intrusive means to verify their suspicions before" conducting a traffic stop because it would "unduly hamper the police's ability to make swift, on-the-spot decisions." (Doc. 92 at 10) (citing Doc. 82 at 10). Defendant argues that, here, unlike in *Sokolo*, police were aware of conflicting information prior to the stop because it was categorized as a civil matter. (*Id.* at 10–11). Thus, according to the Defendant, officers should have confirmed the caller's husband's description, run an NCIC check on his name, and obtained his picture before pulling up next to the vehicle to determine whether the caller's husband was the driver. (Doc. 49 at 10). Alternatively, Defendant insists that officers should have attempted to make contact with her husband on his cell phone to verify whether he was in the vehicle prior to making the stop. (*Id.*).

The Court agrees with the Report and Recommendation that requiring law enforcement officers to jump through such hoops to establish reasonable suspicion is unduly burdensome. Again, Deputy Gann testified that he was unaware of the

9

report's categorization as possibly "civil" in nature.   (Doc. 89 at 34).   In any case, reasonable suspicion is evaluated in the "totality of the circumstances."   *Alamaba,* 496 U.S. at 330.   Given what Deputy Gann knew at that time—that the vehicle was reported possibly stolen, that the caller had not heard from her husband in more than a day and could not verify whether he was one of the several occupants— reasonable suspicion existed to make an investigatory traffic stop.

Last, Defendant argues that the Magistrate Judge's finding that the 911 caller's contemporaneous statement that the vehicle was traveling over the speed limit at 90 miles per hour would have established probable cause is erroneous because law enforcement did not observe the vehicle speeding.   (Doc. 92 at 11) (citing Doc. 82 at 13 n.5).   Defendant relies on *United States v. Brown,* 835 F. App'x 551 (11th Cir. 2021), which held that "the probable cause standard is met when an officer personally observes a traffic infraction."   This ignores, however, that the Supreme Court has "firmly rejected the argument that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person."   *Navarette,* 572 U.S. at 397 (citation and internal quotation marks omitted) (alteration in original).   As the Court previously discussed, where the "information bears sufficient indicia of reliability," as here, law enforcement may rely on that information to establish reasonable suspicion.   *McCall,* 563 F. App'x at 700.

*—Rest of page intentionally left blank—*

10

## CONCLUSION

After an independent review of the record and the parties' briefing[2], the Report and Recommendation (Doc. 82) is **ADOPTED** and made a part of this Order for all purposes. Accordingly, Defendant's Motion to Suppress (Doc. 49) is **DENIED**.

**ORDERED** in Tampa, Florida, on July 10, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[2] Defendant's Objections include an "object[ion] to the Court's finding of probable cause based on the smell of marijuana for preservation purposes without any additional legal argument." (Doc. 92 at 12).   Upon a *de novo* review, the Court fully adopts the Report and Recommendation's reasoning in rejecting the argument that the *Williams v. State*, 421 So. 3d 809, 819 (Fla. 2d DCA 2025) opinion, issued more than a year after this traffic stop, is inapplicable here.   The traffic stop here occurred on September 18, 2024, and the *Williams* opinion was issued on October 1, 2025.   (Doc. 89 at 85; Doc. 1).   And binding Florida caselaw in force at the time of the traffic stop clearly permitted a finding of probable cause for the search of a vehicle based on the smell of marijuana emanating from that vehicle.   (Doc. 82 at 16–17) (collecting cases).